**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4369-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANTHONY T. JOHNSON,

     Defendant-Appellant.

_____

Submitted October 10, 2018 – Decided October 24, 2018

Before Judges Gilson and Natali.

On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment No. 10-12-1200.

Joseph E. Krakora, Public Defender, attorney for appellant (William P. Welaj, Designated Counsel, on the brief).

Michael A. Monahan, Acting Union County Prosecutor, attorney for respondent (Michele C. Buckley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Anthony T. Johnson appeals from a February 17, 2017 order denying his petition for post-conviction relief (PCR). We affirm.

## I.

Tried by a jury, defendant was convicted of first-degree murder, N.J.S.A. 2C:11-3(a)(1); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); and second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a). The court imposed an aggregate thirty-seven year custodial sentence, with an eighty-five-percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

We affirmed defendant's convictions and sentence in an unpublished opinion. State v. Johnson, No. A-2101-12 (App. Div. Dec. 17, 2014). The Supreme Court denied defendant's petition for certification. State v. Johnson, 222 N.J. 16 (2015).

The facts underlying defendant's convictions are detailed in our unpublished opinion. We briefly recount those facts to provide context for our decision.

Defendant became embroiled in a dispute with victim Sean Garris, after Garris lifted up defendant's girlfriend's skirt at a barbecue. Weeks later, defendant and Garris argued again over the incident. Defendant testified at trial

that Garris attacked him and placed his hands around his throat.  Defendant claimed he reached for his gun to defend himself and shot Garris in the bicep.  The bullet entered Garris's chest and he later died of internal bleeding.  Defendant fled New Jersey and was apprehended in Albany, New York where he was arrested and interrogated by detectives from the Linden Police Department and the Union County Prosecutor's Office.

Defendant admits that when questioning began, he was advised of his Miranda[1] rights and acknowledged understanding them.  He further concedes that after he advised the police that he wished to speak with an attorney, the interrogation ended.  Approximately eight minutes later, the interview recommenced and the following colloquy ensued:

> DETECTIVE: Okay . . . . The time is approximately 3:53 a.m. . . . [T]he recorder has been turned off for several minutes . . . . [A]fter it was turned off, [defendant] . . . decided to talk to us and answer some of our questions . . . . [Defendant], let me ask you some basic questions.  The choice to speak to us . . . and answer some of our questions, is that your choice alone?
>
> DEFENDANT: That is my choice alone.
>
> DETECTIVE: Did we force you in any kind of way to go back on record and answer any of our questions whatsoever?

---

[1]  Miranda v. Arizona, 384 U.S. 436 (1966).

A-4369-16T4

DEFENDANT: None whatsoever did you force me.

DETECTIVE: Did I make or anybody in this room make any promises to you to go - - if you went back on the record is there anything that was promised to you?

DEFENDANT: Nothing at all.

DETECTIVE: And is this completely voluntarily . . . being done on your part?

DEFENDANT: Completely voluntarily.

DETECTIVE: Okay. . . . [J]ust a few minutes ago you had an opportunity to review your <u>Miranda</u> [w]arnings, your rights . . . your Constitutional [r]ights. . . . [Y]ou want to review 'em again?

DEFENDANT: . . . I know what they are.

DETECTIVE: Okay.

DEFENDANT: There's no point.

DETECTIVE: Okay. The waiver of rights is at the bottom, I need you to read that out loud one more time. If you want to continue, I need you to sign that.

DEFENDANT: I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

DETECTIVE: Do you understand that statement?

DEFENDANT: I understand that statement.

DETECTIVE: Do you have any questions regarding that statement?

DEFENDANT: No, I do not.

DETECTIVE: Okay. Do you wish to continue to speak to us at this time?

DEFENDANT: Yes, I do.

DETECTIVE: Okay. You understand that you don't have an attorney here and you want to continue, correct?

DEFENDANT: When I get tired of answering questions then that's the end of the interview.

At the conclusion of the interrogation, defendant signed a sixteen-page statement containing incriminating information regarding the circumstances of the shooting.

Defendant filed a PCR petition and the court appointed PCR counsel. In his petition, defendant maintained that his trial counsel was ineffective because counsel "fail[ed] to submit a motion to suppress [his] confession under [the] Miranda doctrine." According to defendant, if his statement was suppressed, he may have elected not to testify at trial.

In his supporting certification, defendant claimed the police failed to honor his request for counsel after the first interview ended. Defendant stated:

> After I told the police I would speak to them with my lawyer the first interview ended, then a discussion ensued shortly thereafter whereby I told them again I would speak to the police with my lawyer present and the police responded that either talk to us now or never.

Defendant also claimed trial counsel's representation was deficient because he failed to: 1) provide a demonstration to the jury regarding how the assault occurred; 2) make necessary objections at trial, including to the prosecutor's statements and demonstration during closing arguments; and 3) retain a medical expert to support defendant's claim of self-defense. Defendant also requested an evidentiary hearing.

Judge William A. Daniel, who was also the trial judge, issued a detailed oral opinion in which he rejected defendant's claims that trial counsel was ineffective under Strickland v. Washington, 466 U.S. 668 (1984). The court explained that trial counsel's decision not to file a motion to suppress was a reasonable strategic choice and that any motion would have been unsuccessful because the record clearly established defendant initiated further communication with the detectives after he invoked his right to counsel.

The court also concluded that trial counsel's failure to provide a demonstration to the jury, to object to the prosecutor's summation and to retain a medical expert were strategic decisions that did not fall below an objective

6

standard of reasonableness and did not affect the outcome of the trial. Finally, the court determined that defendant was not entitled to an evidentiary hearing.

On appeal, PCR counsel raised the following argument:

POINT I

THE POST-CONVICTION RELIEF COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO FULLY ADDRESS HIS CONTENTION THAT HE FAILED TO RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL AS A RESULT OF TRIAL COUNSEL'S FAILURE TO PURSUE A MOTION TO SUPPRESS THE DEFENDANT'S STATEMENT GIVEN TO LAW ENFORCEMENT.

Defendant filed a pro se reply brief in which he raised the following point:

POINT I

THE POST-CONVICTION RELIEF COURT ERRED IN DENYING THE APPELLANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO ESTABLISH HIS CONTENTION THAT HE FAILED TO RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL.

Having considered the record in light of the applicable legal principles, we find no merit in defendant's arguments. Judge Daniel's decision is fully

supported by the record and is legally sound. We offer only the following brief comments.

The PCR process provides a defendant a "last chance to challenge the 'fairness and reliability of a criminal verdict . . . .'" State v. Nash, 212 N.J. 518, 540 (2013) (quoting State v. Feaster, 184 N.J. 235, 249 (2005)). When no evidentiary hearing is held we "conduct a de novo review of both the factual findings and legal conclusions of the PCR court." State v. Harris, 181 N.J. 391, 421 (2004).

II.

Because defendant's PCR petition is predicated on his claim that trial counsel was ineffective, he must satisfy the two-part test pronounced in Strickland by demonstrating that "counsel's performance was deficient," that is, "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687; see also State v. Fritz, 105 N.J. 42, 58 (1987). The first prong requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. It is the defendant's burden to prove, by a preponderance of the evidence, that counsel's decisions about trial strategy were

not within the broad spectrum of competent legal representation. Fritz, 105 N.J. at 52.

Under the second prong, a defendant must demonstrate that his counsel's errors prejudiced the defense to the extent that the defendant was deprived of a fair and reliable trial outcome. Strickland, 466 U.S. at 687. To prove this element, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Further, a defendant claiming ineffective assistance of counsel based on counsel's failure to file a suppression motion not only "must satisfy both parts of the Strickland test but also must prove that his . . . [Fifth] Amendment claim is meritorious." State v. Fisher, 156 N.J. 494, 501 (1998) (citing Kimmelman v. Morrison, 477 U.S. 365, 375 (1986)). "It is not ineffective assistance of counsel for defense counsel not to file a meritless motion . . . ." State v. O'Neal, 190 N.J. 601, 619 (2007).

Miranda requires that criminal suspects subject to police interrogation be provided information pertaining to their Fifth Amendment rights before police may elicit incriminating evidence. Miranda, 384 U.S. at 444. Without procedural safeguards in place to ensure that an accused speaks to police with

knowledge of his or her Fifth Amendment rights, any statement obtained during such an interrogation must be suppressed. Id. at 478-79. An accused must be advised of his right to remain silent and to have a lawyer present, and if that right is asserted, it must be "scrupulously honored." Michigan v. Mosley, 423 U.S. 96, 104 (1975). Once an accused has expressed his desire to speak with police through counsel, the accused may not be further interrogated until such counsel is present, "unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. 477, 484-85 (1981).

We reject defendant's contention that trial counsel was ineffective under Strickland because he failed to file a motion to suppress. As Judge Daniel explained:

> During the police questioning . . . at one point the [defendant] . . . indicated that he didn't want to talk to them any further and the questioning stopped. . . . Approximately eight minutes later, the defendant decided he wanted to further talk to the police about the night in question and he was given the opportunity to review the Miranda form, again. He said he understood it. It was the defendant who initiated further communication – it was the defendant who told the police that he wished to talk to them. That's what I conclude based on what I read here. It's clear. He indicated he would talk to them without counsel . . . . There's nothing in the record to reflect that it was the

10

police who initiated further custodial interrogation after the first interview.

We agree with the court that the transcript of defendant's interrogation clearly establishes that the police scrupulously honored defendant's Fifth Amendment rights by stopping all questioning after he requested an attorney. It was only after defendant himself initiated further communication that the detectives recommenced the interrogation. Thus, it would have been a reasonable exercise of professional judgment to forego an application to suppress which would have likely failed. O'Neal, 190 N.J. at 619. Judge Daniel also noted that counsel's decision not to file a motion would not have changed the outcome of the trial "in light of the evidence that was presented during the trial from the witnesses who testified separate and apart from the defendant."

## III.

We reach a similar conclusion with respect to defendant's remaining arguments. As to his claim that counsel was ineffective for failing to retain an independent medical expert to bolster his self-defense claim, defendant did not produce an expert's affidavit, certification or report that would demonstrate what a medical expert would say and how it would have aided the defense. Accordingly, defendant failed to sustain his burden for post-conviction relief. See State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

A-4369-16T4

With respect to trial counsel's failure to object to the prosecutor's closing statement and demonstration, we conclude defendant did not satisfy either part of the <u>Strickland</u> test because as Judge Daniel correctly noted, the prosecution "made proper connections and arguments related to the evidence" and defendant "cannot establish that had the prosecutor omitted the gun demonstration and certain statements there would have existed a reasonable likelihood that the result of the jury verdict would have been different." <u>See</u> <u>Strickland</u>, 466 U.S. at 694. Further, the propriety of the prosecutor's comments during closing was addressed and rejected on defendant's direct appeal.

Defendant's argument that trial counsel was deficient in failing to perform a trial demonstration recreating the assault and circumstances regarding the discharge of the gun is equally without merit. As the court correctly concluded "whether or not to do a demonstration falls within the sound trial strategy."

IV.

Lastly, we note that defendant's claim that he was entitled to an evidentiary hearing is without merit. Hearings in such cases are discretionary. <u>R.</u> 3:22-10. Trial courts should grant evidentiary hearings only if the defendant has presented a prima facie claim of ineffective assistance, material issues of disputed

fact lie outside the record, and resolution of the issues necessitate a hearing. R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013).

That was not the case here. Judge Daniel correctly concluded that defendant failed to establish a prima facie case and the facts relied upon are in the record, particularly the transcripts of the trial and defendant's interrogation. Therefore, we find that the Judge Daniel did not abuse his discretion in denying defendant's request for a hearing.

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-4369-16T4